## GEORGE PARKMAN *versus* LOAMMI CROSBY *et al.*

Where (according to a long established practice in this State) real estate had been attached from time to time on a writ, the date and return day being altered from time to time by the plaintiff's attorney, but the writ had not been returned nor a summons been left with the defendant until after the last attachment, it was *held,* that these proceedings did not vitiate the writ.

The *teste* of a writ is *primâ facie* evidence of the time when it was sued out, but it is not conclusive; and the actual time when it was sued out and delivered to the officer, may be proved by parol evidence. Thus, where a writ was dated March 21, 1831, but was made returnable at the July term of the Court of Common Pleas, in 1832, it was *held,* that parol evidence was admissible to show, that the date was a mistake, and that the writ was in fact returnable at the proper term after it was sued out ; that if such mistake had been taken advantage of by the defendant in due season, the court would have allowed an amendment; that as this was not done, and judgment was rendered against the defendant in such action with his consent, the mistake was cured by *St.* 1784, *c.* 28, § 14 [Revised Stat. *c.* 100, § 21] ; and that a third person to whom such defendant had conveyed the land attached by virtue of such writ and extended upon by the plaintiff in that suit, could not impeach the judgment, in an action against such plaintiff to recover the land, unless fraud and collusion between the parties were proved, nor reverse it on a writ of error.

WRIT of entry. The plaintiff declared upon his own seisin and a disseisin by the defendants. Plea, *nul disseisin.*

At the trial, before *Wilde* J., it appeared, that the plaintiff claimed under Porter Crosby, who, on July 27, 1831, conveyed to him the demanded premises. The deed was recorded on September 15, 1832.

The defendants claimed the demanded premises, under an attachment made, on March 21, 1832, by virtue of a writ dated March 21, 1831, which was issued in their favor against Porter Crosby. Judgment was rendered at the October term 1832, of the Court of Common Pleas, in such action, against Porter Crosby, with his consent ; and the execution which was issued thereon, was extended on the demanded premises on October 18, 1832. The plaintiff then offered Henry H. Huggeford, the deputy sheriff by whom such attachment was made, as a witness. The defendants objected to the admission of any parol evidence relative to the service of such writ ; but the objection was overruled.

The witness thereupon testified, that the writ against Porter Crosby, by virtue of which he attached the demanded premises, was delivered to him by the attorney of the present de

fendants, on January 14, 1831, on which day, at the request of the attorney, he noted an attachment of the demanded premises ; the writ being returnable at the April term 1831, of the Court of Common Pleas ; that this was a secret attachment, and that, in pursuance of the orders of such attorney, he did not leave a summons ; that on the 22d of March next ensuing, the attorney erased the dates and made the writ returnable at the succeeding July term of that Court ; that he made similar erasures and alterations in the same writ, from time to time, for the following terms of that Court in October, January, April, and July, but without altering the year of its ·date, which remained as it stood originally ; that this was done in the absence of Porter Crosby ; that the witness noted attachments of the demanded premises, upon such writ, but without extending the same thereon, for each of such terms, except that he made the return which was indorsed on the writ under date of September 21, 1831, since partially cancelled and altered to March 1832 ; that he made a private mark on the writ, as a reference to his book in which the attachments were fully noted ; that the witness charged and received, in every instance, the usual fee for making the service ; that he left a summons for Porter Crosby on June 15, 1832, for the first time, and then returned the writ to the next July term of that Court, and that private attachments made in this way were usual.

The case was thereupon taken from the jury by the consent of the parties, and reserved for the consideration of the whole Court, with liberty to the parties to raise such questions and points as they should deem pertinent : and the Court were to order a nonsuit, default, or new trial, as justice might require.

*March 4th.*     *Thacher*, for the plaintiff.  As the plaintiff could not come in and object to the recovery of the judgment against Porter Crosby, he should be now allowed to take advantage of its invalidity, although it remains unreversed between the parties. *Twyne's case*, 3 Co. 82 ; *Proctor* v. *Johnson*, 2 Salk. 600 ; *S. C.* 1 Ld. Raym. 669 ; *Duchess of Kingston's case*, 20 Howell's State Tr. 537, note ; *Smith* v. *Saxton*, 6 Pick. 483.  If for any cause the writ was voidable, any one may avoid it to establish his title

The judgment against Porter Crosby was invalid, because the writ was dated March 21, 1831, but was not returned until the July term of the Court of Common Pleas in 1832. It was therefore a mere nullity.   It is true, that where the date of a writ is erroneous it may be amended ; but in this case, the writ was in fact issued in 1831, and any alteration of the year of the date would be against the truth of the case. If Porter Crosby had assented to such amendment, his assent would not have bound strangers.

*Rand, Ward,* and *Fiske,* for the defendants, cited to the point, that the erasures and alterations in the writ did not render it invalid, *Gardner* v. *Webber, ante,* 251 ; *Dearborn* v. *Twist,* 6. N. Hampsh. R. 46 ; that the error in the date of the writ did not render it void, but was amendable and within the statute of jeofails, *Walker* v. *Hawkey,* 5 Taunt. 853 ; *Adams* v. *Gluck,* 3 .Brod. & Bingh. 25 ; *Bourchier* v. *Wittle,* 1 H. Bl. 291 ; *Davis* v. *Owen,* 1 Bos. & Pul. 342 ; *Elvin* v. *Drummond,* 4 Bingh. 278 ; *Nevil* v. *Bates,* Yelv. 64 ; *Dumond* v. *Carpenter,* 3 Johns. R. 183 ; *M‘Conkey* v. *Glen,* 1 Cowen, 141 ; *People* v. *Judges of the Albany Mayor's Court,* 9 Wendell, 486 ; *People* v. *Steuben,* 5 Wendell, 103 ; *Kissam* v. *Morris,* 2 Wendell, 259 ; *Pepoon* v. *Jenkins,* Coleman's Cases, 55 ; *Morse* v. *Dewey,* 3 N. Hampsh. R. 535 ; *Gordon* v. *Valentine,* 16 Johns. R. 145 ; *Hazeldine* v. *Walker,* 1 Har. & Johns. 487 ; *Inskeep* v. *Lecony,* Coxe's (New Jers.) R. 111 ; and that the appearance of the party was a waiver of all formal defects, and that the plaintiff stood in no better situation than Porter Crosby, *Fox* v. *Money,* 1 Bos. & Pul. 250 ; *Downes* v. *Witherington,* 2 Taunt. 243 ; *Anon.* 1 Chitty's R. 129 ; *Livermore* v. *Boswell,* 4 Mass. R. 437 ; *Ripley* v. *Warren,* 2 Pick. 592 ; *Prescott* v. *Tufts,* 7 Mass R 209 ; *Olmsted* v. *Hoyt,* 4 Day, 436 ; Com. Dig. *Abatement, H* 1 to *H* 17 ; Laws on Pl. 106 ; Tomlin's Law Dict, *Amendment.* cites *Rex* v. *Landaff,* 2 Strange, 1011.

WILDE J. delivered the opinion of the Court.   Two objections are made to the tenants' title : 1. That the writ of attachment under which they claim was rendered null and void by reason of certain erasures and alterations made therein without authority ; and 2. If not so, that the same was

Parkman
*v.*
Crosby.

*March* 16th

Parkman
v.
Crosby.

void because several terms of the Court of Common Pleas intervened between the date and the return day of the writ. The first objection has been recently considered in the case of *Gardner* v. *Webber*, in the county of Norfolk, in which a similar objection was raised ; and it was decided, after a full argument, that such objection could not be sustained. No new reason has been urged in the argument of this case, to raise a doubt of the correctness of that decision. The question is one of practice, which we apprehend has long been considered as established and regular by the profession generally, and although we are not aware of any decision upon the question in this Court before the case of *Gardner* v. *Webber*, yet several cases are recollected in which the like questions were raised in the county courts of Common Pleas, and the alterations were held regular. Then when it is considered that the practice has prevailed for a great length of time, in all parts of the Commonwealth, as I think it has, it must be presumed to have been sanctioned by the Court, and ought not now to be disturbed. Rules of practice, like laws, ought not to be changed so as to have a retroactive effect, nor unless some good reason can be given for the change. It has been said, that the practice is against law, and of dangerous tendency, because it facilitates secret attachments on real estate, and may defraud the clerks of their fees for blank writs. Such attachments, however, are legal ; and although frequent attempts have been made in the legislature for the last forty years to change the law, and to require such attachments to be registered, yet no such change has been made ; and the Court will not modify the rules of practice with a view to throw any obstacles in the way of parties in the exercise of their legal rights. It has been said, also, that the sheriff is commanded in a writ of attachment to serve and return it at the return day, and that after the writ comes to his hands the plaintiff has no power to countermand the command in the writ. But this position is clearly untenable ; for the sheriff is bound to follow all lawful directions of the plaintiff, as to the mode or service, whether to attach sufficient or hold to bail, or to make a mere formal attachment. And unquestionably, before the writ is served, the plaintiff may forbid the service, and the

sheriff is bound to obey. So he may forbid the arrest of the debtor on a *capias* or execution ; and if the sheriff should make an arrest in defiance of the prohibition, he would be liable for false imprisonment. But if it were otherwise, yet if the plaintiff forbids the service, and the service is not made, or is not completed after noting an attachment, the plaintiff may sue out a new writ returnable to the next term and whether the attorney makes use of a new blank, or to save labor alters the date and return day of the old writ, seems to be quite immaterial. Certainly there is no illegality in such alteration, nor can any one be injured thereby, unless the clerk may be deprived of an inconsiderable profit, too inconsiderable to be regarded so long as no complaint is made by that officer.

As to the second objection, it has been insisted by the demandant's counsel, that a writ of attachment not made returnable to the term next ensuing the *teste*, is a mere nullity. On the other hand it has been contended, that the *teste* of the writ in this case was a mere mistake, and that the process was not irregular and void, but at most was only erroneous ; and that the mistake is cured by the statute of jeofails.

In the case of *Parsons* v. *Loyd*, 3 Wils. 341, it was decided that a *capias ad respondendum* tested in Trinity term and returnable in Hilary term following, was irregular and void ; and the plaintiff in that writ was held liable in an action of trespass for false imprisonment. But in that case no mistake in the *teste* was alleged ; but on the contrary it was alleged and admitted by the pleadings, that the *capias* was sued out in Trinity term, and was afterwards, on motion, discharged and set aside for irregularity. In the present case it has been proved by parol evidence, that the *teste* was left unaltered by mistake, and that the writ was sued out and made returnable to the proper term. We think this parol evidence was competent to prove the mistake, and was rightly admitted The like evidence was admitted in *Olmsted* v. *Hoyt*, 4 Day, 436 ; and there seems to be no good objection to such evidence. We consider, therefore, that the mistake is satisfactorily proved, and that the writ was made returnable at the next term after it was sued out.

Parkman
v.
Crosby.

These facts being established, we think that the writ cannot upon any legal principles be treated as a nullity. A writ does not necessarily take effect at the day of its date or *teste*, but from the time it is actually sued out, or from the time of its delivery to the officer, or the time of its service ; and in whichever way this writ may be considered, it was regular The *teste* is *primâ facie* evidence of the time when the writ was sued out, but it is not conclusive ; and the actual time when the writ was sued out and delivered to an officer, may be shown, and upon the same principle that the time of the delivery of a deed may be shown, when it becomes necessary to ascertain the time when a deed or contract took effect. The mistake therefore in the *teste* is cured by *St.* 1784, c. 28, § 14 ; the language of which is very comprehensive. It is enacted, that no summons, writ, declaration, process, judg ment, or other proceedings in the courts, or course of justice, shall be abated, arrested, quashed or reversed for any kind of circumstantial errors or mistakes, when the person and case may be rightly understood by the court, nor through defect or want of form only ; and the court on motion may order amendments. If the mistake had been taken advantage of in season, the court would have allowed an amendment. As this was not done, and the defendants in the action consented to judgment against them, the mistake is cured by the statute. This is conclusively settled by the cases cited by the tenants' counsel, and by the whole current of the authorities. The case of *Olmsted* v. *Hoyt*, 4 Day, 436, is in all respects simi lar to the present case as to this point, and it is supported by the English decisions, and those of New York, and by this Court in *Livermore* v. *Boswell*, 4 Mass. R. 437. In that case the return of the officer was dated November 26, 1806, and the writ was dated by mistake on the 25th of December of the same year, and was returnable, by the terms of the writ, in December 1807 ; but the writ was actually returned and entered at the December term 1806. The defendant moved in arrest of judgment ; but the Court held that the mistake was cured by the defendant's appearing and pleading the general issue.

The English cases are full on this point, and particularly

where the objection is to the irregularity of process. The rule is, that a defendant who complains of irregularity of process, must, if he has an opportunity, apply to have it set aside before the plaintiff has taken any further step in the cause. The case of *Downes* v. *Witherington*, 2 Taunton, 242, is a strong case in support of this position. It is clear also, that if the defendant in the action cannot, after judgment, take advantage of the mistake in the writ, his grantee cannot impeach the proceedings and set aside the judgment in this action, unless he can show fraud and collusion ·between the parties ; which is not pretended ; and we think it equally clear that he could not reverse the judgment on a writ of error, for the reasons already stated.

The mistake in the date of the writ is clearly proved, and s cured by the statute ; and the alterations complained of are sanctioned by long practice, in which we can perceive no illegality. So that neither of the objections to the tenants' title can in our opinion be maintained.

<div align="right">*Demandant nonsuit.*</div>